[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties in this case have filed various post-judgment motions. Primarily, the defendant seeks to modify the existing order of custody of two minor children and there are requests concerning allocation of medical expenses, attorney's fees, support, and prior unreimbursed medical expenses.
The children involved in this dispute are Mary Parkhurst, born September 7, 1981; and Frank (Quinn) Parkhurst, born May 2, 1983. Mary is presently 17 years old and Quinn is 15.
The parties separated in February 1989. At that time Mrs. Parkhurst left the marital home in the state of New York and moved to Connecticut. Thereafter allegations were made that Mr. Parkhurst had sexually abused Quinn.
The charges, which were in New York, were settled with Mr. Parkhurst agreeing to accept an Adjournment in Contemplation of Dismissal upon condition he receive counseling from a court appointed psychologist. Mr. Parkhurst did not continue with the mandated counseling program and literally withdrew from the lives of the children. He had very limited contact with the children since 1991 and for at least four of those years had no contact at all with them.
A dissolution was granted in this court on August 15, 1997 and at that time the parties agreed that sole custody of the children would be with the wife. They also agreed that the husband would have no scheduled visitation, at least while the children were being evaluated by Dr. Kenneth Robson, a specialist in child and adolescent psychiatry. The parties reserved the right to raise issues of the husband's visitation and custody rights upon completion of his evaluation. Additional facts will be discussed as appropriate to the orders being made.
Custody:
The defendant's request for joint legal custody is denied. Custody issues are governed by Connecticut General Statutes § 46b-56, which provides in relevant part: CT Page 11553
 "[T]he court may at any time make or modify any proper order regarding . . . custody and visitation . . . according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable."
 "In . . . modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference . . ."
The wife has been the primary caretaker for the children for years and has indeed, been the sole caretaker. Dr. Robson testified the children do not know their father and that he is a stranger to them. Both children have indicated a strong resistance to even visitation with the defendant.
A family relation's evaluation dated September 23, 1996 recommended that the plaintiff be awarded sole custody.
Dr. Robson testified that joint custody could be good or bad, depending on how it is managed by the parties, but he could not recommend either way.
The Court does not believe the parties could manage any degree of cooperation in a joint custody situation. They distrust each other and the motives of each other. They have had practically no communication in years and neither parent has any respect for the other. Joint custody would only add to the conflict between them and additional conflict would be detrimental to the welfare of the children. Under all the circumstances of this case sole custody should continue with the wife.
Visitation:
Both children have told the attorney appointed to represent them that they want to decide when, where and under what circumstances there should be a relationship with the defendant. They have indicated an unwillingness to comply with any imposed order of visitation. Significantly, both have also told their attorney that the plaintiff did not interfere with or impede any desire on their part to visit their father. But neither child has any interest in seeing him, at least at the present time. Dr. Robson has testified that it would be harmful to the children and CT Page 11554 to any attempt at reunification to force the issue if they feel strongly about doing so. He opined that it would be unwise or a "roll of the dice" to force them into unwanted visits.
The children are described as bright and well mannered who perform well academically and socially. They are of a biological age and appear to be of sufficient maturity to decide if and when they want to see the defendant. The estrangement between the defendant and the children are, to a large degree, the result of his own action, and his more recent efforts at establishing a relationship with them is described as flawed and inappropriate.
For these reasons, the defendant shall have reasonable visitation with said children, but subject to the following:
 1. All visitation shall be by mutual agreement of the parties (plaintiff and defendant), subject to reasonable notice and length.
 2. All visitation shall be with the consent and agreement of the minor children and shall not be forced upon them.
 3. The defendant shall be entitled to write to the children and the plaintiff shall not open any correspondence from the defendant to the children.
 4. The defendant shall be entitled to make telephone calls to the children at reasonable times on a weekly basis. However, the children shall not be forced to talk to the defendant if they do not wish to do so.
Child Support:
The defendant indicates on his financial affidavit that his gross weekly earnings are $295 and his net is $252. He lists weekly expenses as $846. There was testimony from his live-in friend (Patricia Slicher) that she makes up the weekly shortfall of approximately $594. She paid $12362 in January 1998 to purge the defendant of contempt for unpaid support. The Court may consider contributions made by a defendant's domestic partner toward shared living expenses as an element of gross income.Unkelbach v. McNary, 244 Conn. 350, 361-65 (1998).
The plaintiff claims, that, using $846 as weekly income for the defendant, he should be paying $200 per week in child support CT Page 11555 per Child Support Guidelines whereas he has been paying $110 per week. She seeks an increase accordingly.
Ms. Slicher testified that the shortfall is really in the nature of a loan to the defendant, which was shown as a debt to her in the amount of $235,000. She candidly admits that it is problematic that the so called "loan" will ever be repaid.
On the other hand, the plaintiff also lives with a domestic partner on an 81 acre tract in a spacious home. She does not pay rent to her friend. She has no substantial assets and her income is $289 per week net (without child support). Her weekly expenses are approximately $420. Balancing the equitable factors as permitted by support guidelines, it appears that the defendant is able to pay more than the $110 order, however, some deviation downward appears warranted. The Court concludes that the defendant should pay $75 per week per child, or a total of $150 per week in child support. This is a deviation in his favor of $50 per week. This order shall be effective commencing the first of the month following the date of this decision.
Other: 1. The parties shall pay equally the reasonable attorney's fees for the attorney appointed for the minor children.
 2. The defendant has not completed the Parenting Education Program. He shall complete said program or a reasonably equivalent program in New York within 90 days.
 3. Neither party shall say negative things to the minor children about the other or otherwise attempt to negatively influence the children against the other.
 4. The defendant shall pay the plaintiff the sum of $1082.66 for his share of past unreimbursed medical expenses which the Court finds she documented to the defendant — said sum to be paid within 45 days.
 5. The defendant shall be responsible for any costs regarding the appearance of Dr. Robson at the hearing on this matter. (Dr. Robson was called as a witness by the defendant). Prior orders with respect to costs of evaluation of the parties and children by Dr. Robson are unchanged.
CT Page 11556
 6. Each party shall be responsible for his or her own counsel fees.
Klaczak, J.